FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Jul 09, 2025

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

JULIE K.,[1]

                Plaintiff,

      v.

FRANK BISIGNANO,
Commissioner of Social Security,

                Defendant.

No.  2:25-cv-0007-EFS

**ORDER REVERSING THE ALJ'S DENIAL OF BENEFITS, AND REMANDING FOR MORE PROCEEDINGS**

      This is the second time that Plaintiff Julie K. asks the Court to reverse the Administrative Law Judge's (ALJ) denial of Title 16 benefits. At issue is the closed period from September 5, 2018, the alleged onset date, through May 22, 2023, the date Plaintiff was found disabled in connection with her subsequent Title 16 application. For

---

[1] For privacy reasons, Plaintiff is referred to by first name and last initial or as "Plaintiff." See LCivR 5.2(c).

DISPOSITIVE ORDER - 1

the at-issue closed period, Plaintiff argues the ALJ erred 1) by not fully and fairly developing the record and 2) when evaluating her symptom reports, the medical opinions, and her hand disorders. The Court agrees the ALJ erred by not evaluating the at-issue medical opinions against those issued by the State agency in connection with the subsequent Title 16 application, as they addressed the same impairments. Thus, remand for further proceedings is directed.

## I.    Background

In June 2018, Plaintiff fled from her husband of more than 20 years—a marriage which involved physical and verbal abuse—and she stopped using substances and moved in with her sister and brother-in-law.[2] In September 2018, 56-year-old Plaintiff sought benefits under Title 16 based on her mental-health impairments, including PTSD, anxiety, personality disorder and depression.[3]

The agency denied Plaintiff benefits. Plaintiff requested a hearing before an ALJ, and in December 2020 and September 2021, ALJ C.

_____

[2] AR 45, 288, 372, 425, 445, 685, 700, 818.

[3] AR 238–49.

Howard Prinsloo held telephonic hearings.[4] Plaintiff testified that, even though she engaged in therapy and medication management, her mind races due to overwhelming feelings in her head, making it difficult to concentrate.[5] She also stated she usually oversleeps in the morning given that she has difficulty falling asleep, can be groggy due to her medication, and often gets "stuck in a mood," causing her to isolate.[6] She testified that on her good days she interacts with her sister, with whom she lives, goes for a walk, and tries to do something, but that on bad days—which occur a couple days a week—she sleeps or isolates in her room or goes walking by herself.[7] Plaintiff testified she is able to care for herself and help with simple household chores, but she relies on her sister and brother-in-law for help with paperwork and to "lighten the mood or that type of thing."[8] She attended mental-

---

[4] AR 34–51, 81–84, 86–88, 919–24.

[5] AR 40, 45–48.

[6] AR 40–43.

[7] AR 40–42.

[8] AR 42.

health therapy on about a monthly basis in early 2019, with breaks in therapy from November 2019 to January 2020 and from December 2020 to March 2021.[9]

After the hearing, the ALJ issued a decision denying benefits.[10] Plaintiff appealed to federal district court.[11] This Court found the ALJ erred by not considering Plaintiff's claims of grogginess and all the medical opinions; the matter was remanded back to the Social Security Administration (SSA) for further proceedings in October 2023.[12]

In the interim, on May 23, 2023, Plaintiff filed a new Title 16 application, and the SSA later found Plaintiff disabled beginning that date.[13] The Notice of Award dated May 9, 2024, is contained in this administrative record, but the SSA's State agency medical opinions

---

[9] *See, e.g.*, AR 478–501, 553–665, 818–20, 826–28, 834–36, 842–53.

[10] AR 12–33. Per 20 C.F.R. § 416.920(a)–(g), a five-step evaluation determines whether a claimant is disabled.

[11] EDWA No. 2:22-cv-271-EFS.

[12] AR 955–87.

[13] AR 1038–55, 1108–15.

supporting that decision, are not contained in this administrative record.[14]

As to the at-issue older Title 16 application, ALJ Prinsloo held a new hearing in September 2024 during which Plaintiff and a vocational expert testified.[15] Plaintiff again testified that her mental health varies, depending on the day.[16] On her bad days, she said that she is unable to get out of bed, check her phone, or be around people; she testified that she has about 1–2 bad days a week.[17] She stated that her anxiety can be triggered by watching something violent on TV or by nightmares, and that as a result she may miss appointments, lose sleep at night, and be tired in the morning.[18] She reported that she takes medication prescribed by her medication-management provider, with whom she feels comfortable opening up to, but she has difficulty

---

[14] AR 1038–55.

[15] AR 907–18.

[16] AR 912.

[17] AR 912–13.

[18] AR 912–14.

opening up to others.[19] She mentioned that she has problems with leg pain and swelling following a leg surgery.[20] The medical records reflect that Plaintiff continues to report struggling with anxiety, nightmares, flashbacks, panic, staying asleep, trust, and feeling guilty.[21] Physically, she has recurrent infections on her left leg and hand arthritis, and she had bilateral trigger finger surgeries in 2023.[22]

In October 2024, ALJ Prinsloo issued his decision denying benefits for the at-issue period of September 5, 2018, to May 22, 2023.[23] The ALJ found Plaintiff's alleged symptoms were not entirely consistent with the medical evidence and other evidence.[24] As to the sequential disability analysis, for the period from September 5, 2018,

---

[19] AR 913.

[20] AR 914.

[21] *See, e.g.*, AR 425, 695, 705, 1637, 1649–50, 1657, 1689.

[22] AR 400, 816, 864–65, 1217, 1456, 1485, 1717, 1755–58.

[23] AR 881–906.

[24] AR 892.

the application date, through May 22, 2023, the date that Plaintiff was found disabled in the more recent disability application, the ALJ found:

- Step one: Plaintiff had not engaged in substantial gainful activity.

- Step two: Plaintiff had the following medically determinable severe impairments: PTSD, anxiety disorder, personality disorder, and depressive disorder.

- Step three: Plaintiff's impairments did not meet or medically equal the severity of one of the listed impairments.

- RFC: Plaintiff had the RFC to perform a full range of work at all exertional levels with the following nonexertional limitations:

  > [S]he can perform routine, well-learned tasks. She can tolerate superficial or occasional contact with the public. She cannot perform tasks requiring teamwork with co-workers; she must work independently.

- Step four: Plaintiff had no past relevant work.

- Step five: considering Plaintiff's RFC, age, education, and work history, Plaintiff could perform work that existed in significant

numbers in the national economy, such as floor waxer, cleaner
II, and hand packager.[25]

Plaintiff timely requested review of the ALJ's decision by this Court.[26]

## II.    Standard of Review

The ALJ's decision is reversed "only if it is not supported by
substantial evidence or is based on legal error" and such error
impacted the nondisability determination.[27] Substantial evidence is
"more than a mere scintilla but less than a preponderance; it is such

_____

[25] AR 884–99.

[26] ECF No. 1.

[27] *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012). *See* 42 U.S.C. §
405(g); *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) ),
*superseded on other grounds by* 20 C.F.R. § 416.920(a) (recognizing that
the court may not reverse an ALJ decision due to a harmless error—
one that "is inconsequential to the ultimate nondisability
determination").

1    relevant evidence as a reasonable mind might accept as adequate to

2    support a conclusion."[28]

## III.   Analysis

4          Plaintiff argues the ALJ committed several errors: 1) not fully

5    and fairly developing the record; 2) not properly assessing Plaintiff's

6    testimony; 3) not properly evaluating the medical opinions; and 4) not

7    properly assessing the hand disorders. In response, the Commissioner

8    maintains that the ALJ's decision should be affirmed because the ALJ

9    did not commit any harmful errors. As is explained below, the ALJ

10    erred by not considering the basis for the SSA's disability finding in

------------------------------

12    [28] *Hill*, 698 F.3d at 1159 (quoting *Sandgathe v. Chater*, 108 F.3d 978,

13    980 (9th Cir. 1997)). *See also Lingenfelter v. Astrue*, 504 F.3d 1028,

14    1035 (9th Cir. 2007) (The court "must consider the entire record as a

15    whole, weighing both the evidence that supports and the evidence that

16    detracts from the Commissioner's conclusion," not simply the evidence

17    cited by the ALJ or the parties.) (cleaned up); *Black v. Apfel*, 143 F.3d

18    383, 386 (8th Cir. 1998) ("An ALJ's failure to cite specific evidence does

19    not indicate that such evidence was not considered[.]").

Plaintiff's more recent disability application, particularly the supporting State agency medical opinions.

## A.    Duty to Develop the Record

"The ALJ always has a special duty to fully and fairly develop the record" to make a fair determination as to disability, even where, as here, "the claimant is represented by counsel."[29] This duty is triggered "when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence."[30] This "affirmative responsibility to develop the record" is necessary to ensure that the ALJ's decision is based on substantial evidence.[31]

The parties disagree as to whether the ALJ satisfied his duty to fully and fairly develop the record. Plaintiff argues that by not including critical evidence relating to her second Title 16 application, particularly the opinions of the State agency medical sources who

---

[29] *Celaya v. Halter*, 332 F.3d 1177, 1183 (9th Cir. 2003) (cleaned up).

[30] *Ford v. Saul*, 950 F.3d 1141, 1156 (quoting *Mayes v. Massanari*, 276 F.3d 453, 459–60 (9th Cir. 2001).

[31] *Celaya*, 332 F.3d at 1184.

1  reviewed the evidence and determined Plaintiff was disabled, the ALJ

2  failed to fully and fairly develop the record. In response, the

3  Commissioner argues that the ALJ did not need to include the

4  subsequent SSA decision or the State agency medical source opinions

5  because the ALJ fully and fairly considered the non-ambiguous medical

6  records for the at-issue period.

7      The Commissioner does not dispute that the same impairments

8  were before the SSA in both Title 16 applications, i.e., there is no

9  mention by the Commissioner that there was a separate impairment

10  considered by the SSA in the newer Title 16 application that served as

11  the basis for the disability finding. Because both of Plaintiff's Title 16

12  disability applications are based on the same (or similar) impairments,

13  the Court agrees with Plaintiff that the State agency medical opinions

14  supporting the disability decision for the newer application—opinions

15  that existed before the more recent administrative hearing and the

16  ALJ's disability denial—should have been included and considered by

17  the ALJ when evaluating Plaintiff's symptom reports and the medical

18  opinions.

19

1    Without these more recent State agency medical opinions, it is

2    unclear why the SSA has taken different positions as to Plaintiff's

3    disability claims—claims that are based on the same or similar

4    impairments. These more recent State agency medical opinions could

5    be critical to the step-two analysis and/or the symptom-report and

6    medical-opinion evaluations.

7    For instance, if the SSA found Plaintiff's hand impairments to be

8    a severe impairment in May 2023, this is relevant to the assessment of

9    whether Plaintiff's hand impairments were severe prior thereto,

10    contrary to ALJ Prinsloo's finding that Plaintiff's left trigger finger was

11    a transient impairment. Such an error would impact, for at least a

12    portion of the at-issue period, the crafted RFC, which allowed for a full

13    range of work without any manipulation or grasping limitations.[32]

14

15

_____

16    [32] On remand, the ALJ is to consider that Plaintiff reported difficulties

17    with her hands as early as July 2021, and that she did not have

18    surgery on her left hand until April 2023 and her right hand until

19    November 2023. AR 854–56, 1453–56, 1479–84.

Likewise, if the SSA in May 2023 found Plaintiff's mental-health impairments to be disabling, such is favorable evidence relevant to Plaintiff's instant disability claim. For instance, if the State agency medical opinions relating to the May 2023 application found Plaintiff's mental-health impairments caused disabling limitations, this is relevant information for ALJ Prinsloo to have considered when assessing Plaintiff's mental-health symptom reports, reports which ALJ Prinsloo discounted because he found Plaintiff's reported mental-health symptoms associated with transient stressors and inconsistent with her reported improvement in mental-health symptoms with treatment, the mental-status examinations, and her activities, including travel.[33] The ALJ's finding that Plaintiff's symptoms improved with treatment would directly conflict with a finding that, notwithstanding such treatment, Plaintiff's longstanding mental-health impairments caused disabling limitations in May 2023. Likewise, the medical records after May 22, 2023, do not show that Plaintiff's mental-health conditions significantly deteriorated but

---

[33] AR 891–94.

rather continued to reflect waxing and waning of Plaintiff's PTSD, personality disorder, anxiety, and depression. In addition, while ALJ Prinsloo found Plaintiff's travels to Minnesota, North Carolina, Montana, Las Vegas, and California to visit family members inconsistent with her reported symptoms, the medical records after May 22, 2023, reveal that Plaintiff engaged in similar travels, as she went camping with her family and traveled to Minnesota and California twice for family reasons.[34] Notwithstanding these travels, she was deemed disabled as of May 22, 2023. Accordingly, the State agency medical opinions issued in connection with the 2023 Title 16 application—and which were available to ALJ Prinsloo when he reviewed the record—are necessary for a proper evaluation of Plaintiff's reported symptoms in this matter.

Likewise, the later issued State agency medical opinions are necessary for a proper evaluation of the medical opinions considered by ALJ Prinsloo. The only medical opinions ALJ Prinsloo found persuasive were the State agency medical opinions issued by Vincent Gollogly,

---

[34] AR 1649, 1657, 1663, 1668.

DISPOSITIVE ORDER - 14

PhD, and Leslie Postovoit, PhD, in March 2019 and June 2019.[35] In comparison, the ALJ found the following treating and evaluating mental-health opinions, along with the reviewing opinion of Aaron Burdge, PhD, unpersuasive: Bob Ebel, PA-C (July 2018); Thomas Genthe, PhD (July 2018, June 2020, April 2022); Tyson Andelin, PA-C (June 2020, July 2021, April 2022, and March 2023); Shawnta Sackett, ARNP (August 2021); and David Morgan, PhD (January 2023).[36] One of the reasons the ALJ found the opinions of Dr. Genthe, Dr. Burdge, and Dr. Morgan unsupported was because they "had a limited understanding of the overall diagnostic picture on which to form an opinion" as they had not reviewed identified treatment or other records.[37] It would be highly relevant to the evaluation of these medical opinions if the State agency medical sources tasked with reviewing the medical record in connection with the May 2023 application, found the

---

[35] AR 894.

[36] AR 894–97.

[37] AR 895.

longitudinal medical record supported disabling non-exertional limitations.

Therefore, by not including and considering the basis for the May 2023 disability decision and the related State agency medical opinions, the ALJ failed to fairly and fully develop the record, thereby impacting the evaluation of the Plaintiff's reported symptoms and the medical opinions, and potentially impacting the step-two finding as to Plaintiff's hand conditions.

**B.   Remand**

Because the ALJ erred by not considering the 2023 disability finding and related State agency medical opinions, remand is necessary. Plaintiff asks for a remand for benefits, arguing that the ALJ's errors when evaluating the medical opinions and Plaintiff's symptom claims serve as a basis to award benefits. The Court currently declines, however, to award benefits for the at-issue period. It is unclear why disability was awarded in 2023. The Court finds the favorable 2023 disability decision and related State agency medical opinions are necessary evidence for the ALJ to consider when

evaluating the at-issue disability application spanning September 5, 2018, to May 22, 2023.

### IV.    Conclusion

Plaintiff establishes the ALJ erred. On remand, the ALJ shall conduct anew the disability evaluation, beginning at step two, and when doing so consider the basis for the awarded disability in May 2023 and explain whether the medical opinions relevant to the at-issue period are consistent with the later issued State agency medical opinions, along with whether they are consistent with the evidence from other medical sources and nonmedical sources and supported by the objective medical evidence and supportive explanations.[38]

Accordingly, **IT IS HEREBY ORDERED**:

1.    The ALJ's nondisability decision is **REVERSED, and this matter is REMANDED to the Commissioner of Social Security for further proceedings pursuant to sentence four of 42 U.S.C. § 405(g) as to the period from September 5, 2018, to May 22, 2023**.

---

[38] *See* 20 C.F.R. § 4014.1520c(b)(2), (c)(1)–(2).

2.   Consistent with SSA policy, **a new ALJ is to be assigned** to this matter.[39] The ALJ is to issue a new decision **within 120 days.**

3.   The Clerk's Office shall **TERM** the parties' briefs, **ECF Nos. 6 and 8**, enter **JUDGMENT** in favor of **Plaintiff**, and **CLOSE** the case.

IT IS SO ORDERED. The Clerk's Office is directed to file this order and provide copies to all counsel.

DATED this 9th day of July 2025.

_Edward F. Shea_
_____
EDWARD F. SHEA
Senior United States District Judge

---

[39] Program Operations Manual System (POMS) HA 01210.055-D (Assignment of Service Area Cases to Administrative Law Judges).